Case 14-7035, et al., Oscar Salazar, by his parents and next friends, Adela and Oscar Salazar, et al., the District of Columbia, et al., appellants, Chartered Health Plan and DC Chartered Health Plan, Inc. Mr. Love for the appellants, Ms. Millon for the appellees. Please proceed. Good morning, Your Honors. Richard Love for the District of Columbia. Your Honors, in awarding a total of over $2.1 million to lawyers for two years of post-judgment enforcement and monitoring of a 15-year-old's consent decree, the District Court abused its discretion, first, by failing to restrain the pattern of overstaffing and excessive billing that the Court has repeatedly found, second, by declining to make any reduction and then refusing the District's request for plaintiffs to produce time records sufficient to satisfy their burden to demonstrate the reasonableness of their fees for the individual claims, and third, by awarding fees under Paragraph 66 akin to those charged by partners in the nation's largest law firms for trials of complex federal issues in a case where liability has already been established, there is no longer any risk of nonpayment, few, if any, novel issues remain, and where the vast majority of courts in the District of Columbia have applied rates in active federal court litigation that is 36 to 37 percent lower than that awarded here, and such rates are particularly inappropriate and unnecessary for counsel to compensate. Can I start you on the last part? Yes. On the third part. So as I understand the state of your argument, you have not taken issue with the proposition that this is complex federal litigation as to which one of the Laffey rates applies. Well, we do presently. I think, you know, I certainly wouldn't have taken that position with regard to the discovery trial. But I didn't see any notation in your filings below or in your briefs. In fact, I thought I saw the opposite, which is that your argument is that the lower Laffey rate should apply rather than the higher Laffey rate, not that Laffey itself, which is sort of coterminous with complex federal litigation, shouldn't apply at all. I guess I was focusing more on the issue of complex litigation, because I think what the paragraph 66B should be determined in light of what type of litigation this is, and that prevailing market rates for for-profit lawyers is only applicable, as this court recently said in Ely, you know, where it's the same type of litigation. But that's what I'm getting at with Ely. Because as I read Ely, Ely said in that case there was a sub-market, a sub-market within complex federal litigation that had to do with IDEA litigation. As to IDEA litigation, the district had submitted some 40 cases in the district court record that said, look, in IDEA litigation there's a sub-market where some lower rates apply, so we're not in Laffey land. But your argument here has always been different, I think, because you've never argued that this is not complex federal litigation, that there's some sub-market as to which lower rates apply. And what your argument has been, I'm not saying it's right or wrong, but what your argument has been is that if you look at what rates have been applied throughout these cases as a general matter, it's the lower Laffey rate, not the higher Laffey rate. But that still buys into the notion, I think, that this is complex federal litigation of the type that Laffey generally pertains to, not that there's a sub-market as to which there's an entirely different category of rates that you apply, which is the argument that was made and accepted in Ely. Well, I mean, yes, you know, what we are indicating is that, or what we have argued is that the lower Laffey rates are applicable, they further more appropriately the goals of the fee-shifting statute by providing counsel sufficient to maintain representation in this type of case, with balancing the public fist. But, you know, I do think we make the, we certainly make the argument in our brief, I believe, that this litigation is unique. I mean, we say the liability phase has ended. Counsel have no risk of nonpayment. The issues that remain are those that routinely surface in consent decree monitoring case of this type. And very importantly, counsel have significant discretion in this case to determine what, when, and how much legal services to provide. And I think in our brief we said this case is not about attracting competent counsel, it's about mitigating excessive billing by a firm within the monopoly on receiving fees in this case. Well, Mr. Laff, that's not quite fair, is it? Because the question of attracting counsel refers to, you know, the kind of case. A class action like this that's a complex class action that's, you know, if successful is going to require monitoring, counsel have to look at that and say, it's going to be worth my while to put, you know, 20 years of my legal career into such a case or not. So, you know, looking at the case from now, yes, they have a certain, you know, they're not winning the business, but that doesn't mean that attracting competent counsel is not a relevant concern or, you know, maybe you disagree. But I just wanted to probe a little more on the question Judge Finvason was asking. As I understood your briefing, you were arguing that, you know, yes, this is complex federal litigation. You framed your argument in the district court that you wanted to have the rebuttal opportunity that Covington, our decision in Covington, provides. And you said that the Purcell, as our case, shouldn't be read to strip the district court of its opportunity to present contrary evidence to the evidence you're showing that the plaintiffs made, that their rate was reasonable. So they've come forward and made their showing. And you're saying, well, we want to rebut that because we want to point to the uniform practice in this jurisdiction of awarding a lower rate. And so in that sense, you're saying this is complex federal litigation, but we want the lower rate. Is that right? I mean, yes, in part, but I think that in the district court, counsel also raised the argument that this was an inappropriate rate for consent to pre-litigation against the District of Columbia. And I think in our brief, maybe we expand on that position to provide more of the indicia of consent to pre-litigation and the factors which I just articulated, which make it less appropriate for these higher rates. But with that caveat, yes. Just looking at your brief, so on page 49, you say, in arguing as between the high LAFI and low LAFI, just to use shorthand, in arguing for low LAFI, you say, and it's contrary to and far exceeds the rates applied by, this is at the top of the page, by almost all the district courts in the circuit in complex federal court litigation. And then later on in 50 to 51, it's a similar theme. Since 2000, when the district court first applied enhanced LAFI rates in this case, the vast majority, of course, in this jurisdiction have been called upon to decide what rate to apply in complex federal litigation against the government have applied the USAO LAFI rate. So that accepts the premise that this is complex federal litigation, and then the question is, within the account of complex federal litigation, should you apply low LAFI or high LAFI? That I take it to be your argument. But we also say this is especially so where the settlement order itself guarantees the terrorist public will be paid for their work on the case. In this way, as I said, this case is not about attracting competent counsel. That bothers me. I think perhaps I'm reiterating what my colleague already said. Can you get a point in a case and say, well, we're not going to talk anymore about attracting competent counsel because they've already been competent counsel in the case. We're going to go from here on. We're going to reduce the rate. We don't have to attract competent counsel anymore. Can we slice it that way? Don't we have to? Well, I think we are talking about a unique type of litigation, and that's the only point I'm trying to make. You said unique twice, and then the first time that you said unique in the next minute, you said routinely. You can't have both unique and routinely. Forget whether it's unique or not. Can we talk about attracting counsel only in terms of applying that factor in setting a rate for part of the litigation and then decide we don't need it anymore? Don't we have to look at what the counsel is getting himself or herself into in the first instance and stay with the same analysis on that part? Well, I suggest that it is appropriate to take into account the fact that this is 15 years out, that plaintiffs bear no risk of a non-liability or not prevailing or not being paid, that the nature of the litigation has changed. Well, but they do. I mean, in fact, the district court has substantially discounted on various points. She's been very actively involved in reviewing the fees. And, for example, co-counsel, you know, she'll look at big swaths of time they spend and say, no, I'm sorry, that's not going to be compensated. So there is scrutiny, and that's, you know, that's a heavy job on the district court, you know, to which we defer. So I take your argument to be in part because this is, as you say, this, you know, it's a different kind of, it's more monitoring, it's more routine claims presentation, that given that we should look to the different, the more generally inflation index rate rather than the legal services inflation index rate. And then you cite a lot of cases, actually the number of cases that you cite is impressive. Can you identify which of those cases actually dealt with the question of which of the two indices should be used? Because I read a bunch of them, and they all seem to be cases in which nobody proposed anything other than the USAO rate. I'm sorry. I believe D.L. does. In fact, I think in D.L. And, in fact, I think the plaintiffs used some of the declarations where the attorneys sought these higher rates and the court did not agree and imposed the law of Lafayette. I see I have a little time. I do want to reach, if I could, particularly the overstaffing, because I think it's clear here that the district court itself recognized two problems. The district court noted several incidents of overstaffing and unnecessary billing, and she applied some reductions. Yeah, that runs across. When you first got up, you said that you were setting forth the things where the district court erred. You said one was you refused to make any reductions. You made many reductions, didn't you? Well, she made no reductions for the pattern of overstaffing that she repeatedly found. So that's the context in which you would use the phrase she refused to make any reductions. That's correct. Didn't she make some reductions for overstaffing along the way? Or incidents of overstaffing along the way. Right. But isn't that, what's wrong with that? Okay. When you look back at, now, each of you sat cases from the Special Division for Independent Counsel, which are not binding precedent, but they might be instructive. When you look back at those, I don't recall that we ever went through and said, we're going to make a 40% reduction for overstaffing. We always went through when we were the court of first instance and put in, well, they overstaffed at this conference, and therefore we reduced it. Wasn't she doing the same thing here? Well, I think this is a unique situation. You know, first of all, we pointed to orders going back five years to 2008 that found overstaffing in this case. And if I could point, Your Honors, to the last order at issue in this case from March of 2014. And the court found, first she says, I've noted several incidents of overstaffing and unnecessary billing. But the court goes further. She says the court has also found that plaintiff's counsel repeatedly requests unreasonably high amounts of fees because they overstaffed this case. But she didn't do anything about it. Instead, she merely warned the counsel not to over-lawyer the case and that she would carefully scrutinize future requests. This is six years later than the first time she identified overstaffing. We've already paid $8 million to counsel in this case. And we submit that's too little too late to merely discharge her duty to ensure a reasonable fee by warning the plaintiff not to continue to over-lawyer when it was first found six years earlier. Since we've already taken you beyond your time, I'm going to take you a little further beyond. You alluded to the Ely case, which came down so late that I understand why nobody did much with it. But does it tell us something about the burden to be applied in deciding between the USAO Laffey and the SLI Laffey as to whose burden it is to convince the court? Yeah, it's the plaintiff's burden as the seeker of fees. Right. And I think, you know, just to get to the last point I wanted to raise, which is the inadequacy of the time records. I think we've tried to explain in our briefs why it is, you know, practically impossible to ascertain all of the work that was done on behalf of an individual. What should we do about that? If you prevail, what would our order be that would? Well, I think the court could strike those fees. The court could send it back and direct the district court to reconsider the matter after records that are sufficiently probative to determine that information are submitted, and then we can determine whether or not there are additional areas in the category of individual claims that are unreasonable and unwarranted, and that can be litigated. So I think those are the two options. But I was reminded of Ely when you asked that question because Ely said, well, it flips the burden of persuasion. I think the fact that I put the word Ely in the question probably helped remind me. Right. And that's what I think happened here with regard to the time records for individual claims. If the court has no further questions, then I serve the remainder of my time. Well, I have no time. We'll give you a little time. Thank you. We're good about that. Your Honors, may it please the Court. I am Kathleen Millian, and I represent the plaintiffs, a class of District of Columbia Medicaid beneficiaries. The plaintiffs who are in form apocryphal have been able to assert and vindicate their rights in this Court and below because of the fee-shifting provisions of Section 1988. Counsel claims that this case is now in a routine status. The record shows that the routine work that happens in this case, such as monitoring compliance with the decree and assisting individual class members, is done by plaintiffs' counsel at below market rates, rates which are below even the U.S. Attorney's version of the Laffey Matrix, which relies on the All Items Consumer Price Index to increase it. Those rates are enshrined in the consent decree here. And, for example, with respect to my own work, in 2012, my market rate under the Laffey Matrix ought to have been $734, yet the rate that I am paid for work monitoring the decree is $473 an hour, and the rate that I am paid when I work on individual claims for our class members is $134 an hour. The basis of the agreement between the parties was a significant compromise in attorneys' fees rates for monitoring under the decree. The dispute between the parties about rates is for the few categories of work that were accepted from those agreements and as to which the parties also agreed and enshrined it in the consent decree that the ordinary law under Section 1988 would apply. For that work, as the court has pointed out, Ely, as well as its predecessors, makes clear that plaintiffs bear the burden to show that the rates they are seeking are in line with the market. And here, plaintiffs unquestionably met that burden. We submitted 21 affidavits of attorneys who practice complex federal litigation in the District of Columbia. We submitted reports of rates with hundreds of data points for the rates being sought by District of Columbia lawyers conducting bankruptcy litigation, which is a form of complex litigation in the federal courts where lawyers must set forth their rates. We submitted summaries and analyses of the rates data that we presented to the court and showed that the LSI method, the Legal Services Index method, is much closer to actual Washington, D.C. market rates for complex federal litigation than the all-items CPI method. But even so, the Legal Services Index method understates actual market rates from between 14 to 18 percent. In Ely, the plaintiffs made some submissions. I'm not doing a direct comparison, but they did more than just submit the laughing matrix, I think. They submitted cases, at least a handful of cases. That's right, and they also submitted an expert affidavit. And that was not enough. That's what the court found was not enough, that the counsel didn't show that the type of work done in that case met the standard for complex federal litigation in the district court and remanded for further proceedings. Here, I submit that there is no question that the work that is done in this case is complex federal litigation. The record shows that in 2011, the case was proceeding on five different tracks for which we are seeking fees. The monitoring of the compliance with the decree, the work for class members, the prosecution and argument of an appeal in this court under the Gonzaga case as to whether or not there was a private right of action to proceed with the EPSDT claims in the case concerning children's health, attorneys' fees, work, and litigation, and comprehensive settlement negotiations between the parties where, in the years at issue here, the parties engaged in comprehensive, lengthy efforts to see whether additional or further alternate agreements could be reached between them about proceeding forward in the case. And continuing back with the evidence that we submitted here, we also submitted an unrebutted expert affidavit, which showed, Dr. Kavanaugh showed, that the All Items Consumer Price Index, which is used by the U.S. Attorney's Office here as its method of updating a LAPI matrix, since 1998 has included West Virginia and outlying areas of Maryland and Virginia. Prior to 1998, it was more focused on Washington, D.C. and the close-in suburbs. But since 1998, the geographic expanse of that index has increased. That's the All Items Index you're talking about? That's the All Items Index. And because our expert further explains, because 42 points out of the 100 points in that index are for housing costs, and housing costs vary considerably depending on how far one is away from the city center, that the index has become even less of a possible reasonable basis. What is the legal status, if there is one, of the LAPI matrix? It's alive and well, Your Honor. Under Covington, this Court endorsed that the LAPI matrix, either the U.S. Attorney's version or one updated by the Legal Services Index, can be relied upon by litigants. But we did not say which is appropriate to be relied on, or we just said it's case by case. What is the status of that? Is there authority, other than perhaps district court cases that are not binding, that says this is the AO version or the SL version is the right way to go? Well, as I understand the state of the law, as of now, both versions are permissible as a basis to award fees. And you have the burden of establishing that the higher one is the one that's supposed to be used under ELE, if not before, right? That's right. We would have the burden of showing that either one matches the market for complex federal litigation. Did the district court impose that burden on you? Did she apply the proper burden? She did. Now, this issue has been in front of the court at least four times, the district court. It was first before the court in 2000, where we presented the same kinds of evidence we've presented again now. The district court made a ruling in 2000. We submitted in our papers that the District of Columbia has waived its right to appeal now because it didn't appeal in 2000. Again, in litigation where the court issued its decision in 2011, rates were challenged on the same exact ground, that this group of rates where we don't have an agreement ought to be awarded to U.S. attorneys. Which issue exactly are you saying was waived? Because, I mean, new fees are incurred, new work is done, the nature of the work is arguably fresh, and so you have a burden. I mean, certainly you have a burden to come forward with billing records, but so are you saying you don't have a burden anymore or it's law of the case what the rate is or? We're saying that the factual question about which index ought to be used to update the Laffey matrix, as to which we submit it is a question that requires, can require, and can rely upon the expert testimony of an economist, as we did here, to say which index makes sense from an economics point of view. Is that a factual question or a legal question, or do we run behind our fig leaf and say it's a mixed question? Well, Your Honor, I would say it's a factual question, as to which the abusive discretion standard applies. I can see why you'd like it that way. But as to whether it's law of the case, you yourself are making the argument that the USAO Laffey matrix changed because it now incorporates West Virginia and somewhere else, I'm forgetting. That's true. So these things change. That's true. So if they change, then it seems, it's hard to say that it's law of the case. Suppose that the LSI index changes in some way that ought to be taken cognizance of in a subsequent case. Would you say that it's law of the case? I would agree with that, Your Honor, but an exception to law of the case is to show that the facts have changed. And here the defendants are making the exact same argument they raised in 2000 with no new facts to support the claim that they're making. I would also note that the district court found here, with respect to rates, that the all items index includes less than one-half of one point out of the 100 points in the index related to legal services. That point was found by the district court and not challenged on appeal by the District of Columbia. The district has cited many more cases, and I recognize that a lot of those cases are cases in which this issue, which of the two inflation adjustments should be used, wasn't presented. Do you have any explanation why the expert-supported legal services adjusted index is not more prevalent? I'm not sure why it's not more prevalent. I think that in most of those cases the plaintiff's counsel has not made the kind of record that we've made here to show that the all items index update no longer comes anywhere close to the market, the actual market in Washington, D.C., for complex federal litigation. And that is what this court, en banc, in the Save Our Cumberland Mountains case said, that you avoid windfalls to counsel by paying them actual market rates. And that is what plaintiffs seek here. Now, the question is between the two different Laffey methodologies. The district court's opinion relied in substantial measure on the now vacated district court opinion in Neely. Yes. So what do you think the status of that is? I think the judgment of the district court is before your honors, and the record that we made in the district court is before your honors. And the record overwhelmingly supports that the legal services index, just as the court found in 2000 when it did not point to any other recent district court decision as agreeing with it, should stand and be affirmed. I wonder if you could just speak briefly to the question of the time that you spent on appeal against, not the District of Columbia, but third parties and why that should be compensable. Yes. So part of what we do under the act is, under the consent decree, excuse me, is assist individual class members who have an EPSDT claim. That's the Children's Health Program under Medicaid. In the context of assisting children who are in need, who have been prescribed by their doctors, home health services to be received in their home, we sought from the District of Columbia and its contractor, the standard, called the Interpol standard, that it used to make those decisions. The district court and its contractor both refused to produce it. The district court or the District of Columbia? The defendants. You said the district court. Oh, I'm sorry. I'm sorry. The defendants and their contractor both refused to produce it. After extended litigation in district court, the district court ordered that we had a right to it. And then during the course of that, the author of those copyrighted standards, McKesson, intervened. After we had prevailed in the district court, the District of Columbia's contractor, HSCSN, and McKesson filed an appeal. But the district did not. But the district did not. But under judicial watch, the district had control over one of the parties who appealed, its own contractor. Did they, in fact, have litigation control? I didn't see anything that indicated there was record support for the proposition. They had litigation control. They're their subcontractor. They have control out there on the job site. But I didn't see anything, I don't think, of record evidence that they had litigation control, that they were pulling the strings and McKesson or whoever it was. They had the most important kind of practical control. Because they paid the contractor to provide Medicaid to children, the District of Columbia could have said either turn it over or don't use it. Use another standard that can be turned over without litigation. I don't see how you can say that that gives them control in litigation. If they've got a contract, their compliance with the contract is not dependent on the litigation conduct of the coincidental subcontractor. I'm having real trouble with the concept. I know this is a tiny sliver of the fees involved, but I'm having real trouble with the concept of compelling taxpayers to pay for something, litigation, that the taxpayers' representatives were not engaged in. The district did not appeal. Well, I think an important point is that the district did oppose the turning over of these documents to plaintiffs all along the way. And then they lost. And then they lost. They accepted the order of the court. As far as the record shows, they accepted the order of the court. And the interveners appealed. I'm having real difficulty seeing what the jurisprudence would be, what opinion we would write that would create that kind of precedent. And Judicial Watch is very – I know everything is factually distinct, but Judicial Watch is very factually distinct. Right. I'm not sure it's close enough to be any authority for this. I suppose the concern is that if the district can contract out various tasks, which modern government contracts out with great results many tasks, and if the third party puts a roadblock in the way of some legal obligation, then there's no attorney who can pursue that and be assured of getting an ordinary fee shift simply because the function has been contracted out, as opposed to done by the government. There's a little anomaly there, you know, that the government somehow benefits in this odd way from the fact that the function has been contracted out to a third party. That's correct, and the district court made specific findings about that, that under the Medicaid statute, members have a right to know what the standards are going to be applied, whether or not they will get their medical services. And you can't shield that information from the members by saying, well, we have a third party who's handling all that for us, don't come crying to us. That sounds like a merits argument, not an argument as to whether they have to front the fees for somebody when they're not litigating themselves. They were not in this appeal, right? The District of Columbia was not in the appeal. And I understand that the theory could exist. Well, they could have colluded with one of the parties who took the appeal, but there's no evidence that they did. They also didn't turn the documents over to us while the appeal was pending, which they could have done if they wanted to nullify the issue and not benefit from the appeal that their contractor was taking. As to defendant's claims concerning ours, we submit that here the record is replete with a careful, detailed consideration of every objection raised by defendants and 74 pages of decisions by the district court ruling on those objections, granting some and not granting others. The district court not only considered carefully the hours, she carefully considered the rates once again, and applied the lodestar method, which the Supreme Court has said continues to be the appropriate method to award attorney's fees. We submit if the court has no further questions, the decision should be affirmed. I want to just be very clear on one thing. On the Ailey case, you have the burden of establishing which version of Laffey applies, do you not? I agree, yes. Okay. Thank you, Your Honor. Thank you. I thought you said that the first time, then I wasn't sure. I wanted to make sure I had the right answer today. I don't want to misconstrue it. We'll give you two minutes. Okay. First of all, this dispute is not about the availability of fees or the quality of representation. The issue here is about the reasonableness of plaintiff's fees. We spent a lot of time on paragraph 66 fees, which do range all the way up to $753 an hour. But there are, you know, other large areas. The district court's failure to restrain the overspending it found repeatedly since 2008, I think, is a large one. And I think I've already addressed that. I've tried to also. But I wanted to reiterate that it also is, you know, there's 235. Half of the fees under paragraph 66 are for fees on fees, $235,000. And, you know, it's simply we would submit not justified. Plaintiffs have all the incentive they need to competently recover their own fees. And in this case, they had 23 prior petitions. So any complexity that existed, I think, is no longer. Well, in most cases, it's my understanding that fees settle until you don't have as much time of fees on fees. I mean, people have to keep their time. But that's not an avenue that's worked for the district in this case. It hasn't. And that's partly why we come to this court for guidance on some of these issues that we feel the court hasn't taken a sufficient action in order to ensure the reasonableness of the fees here. Now, just one word on the third-party appeal. They weren't vindicating the district's interest here. The third party was vindicating its own commercial interests in this, in its product. The district, you know, said, well, you know, we're. The district was fine with the district to turn it over, although they did oppose that in the district court. But to the extent that the district has an obligation to supply whatever standard is being applied to make these determinations, it couldn't fulfill that obligation if it was using a contractor that had an intellectual property interest in keeping it confidential. So it's, you know, the district does have an interest or an obligation with respect to that information, which took an appeal to vindicate or to enforce. It wasn't the district's product to turn over. I understand that. The vendors took an appeal. We expected that the appeal would resolve the issue. They had the legal right to take an appeal. In fact, it did. It never, you know, I don't think any brief was filed. It was actually settled. But nothing would have kept you from turning over the information during dependency of somebody else's appeal, would it? Well, you would have been in violation of the intellectual property right that they were asserting. Yeah. Okay. You know, in terms of your question, you know, I think that the cases that we did cite repeatedly say that the lower rate is the benchmark in the District of Columbia. And the fact that many practitioners have accepted that, I think counsels to maintain that. But they're not saying a lower rate as between the two because they're not even considering. Nobody was asking for the legal services index rate. My understanding is that in one or maybe two of the cases that I've seen, well, in Ely in this case and a couple of other cases, somebody asked for the legal services index rate. Yeah. And, you know, I guess there's, you know, a couple of those it was granted, a couple it wasn't. But, you know, it's not so much that this issue that you're raising has actually been decided or considered by these courts. No, I understand that. My only point is I think the court can accept the numerous cases that we cited to in the district as indicia of the prevalence of these rates in the market. But how could we have a basis for reversing on that ground when the record in this case in the district court includes those sort of data points and vast array of information about what lawyers in practice actually charge and receive? I mean, many, many affidavits, the National Law Journal survey, the American Lawyer survey. I mean, there's just so much information here. And the district judge considered it and made a decision. But the district court didn't reference any of that. The district court basically said that she found that the LSI index provided the more relevant data. Well, the thing is, yeah. Okay, go ahead. What we submit is that what's really relevant here is, you know, the type of litigation and the prevailing rates for the type of litigation that, you know, in 2012 and 2011 is being conducted in this case. Although, see, I think that gets back to where we started the question. I think it's not quite fair to say the district court was just looking at the legal issue as between the two indices rather than the overall burden. Because the way you briefed this issue in the district court was, yes, complex federal litigation. But as between these two indices, we think the lower one is better. So she's responding to the issue you've served up. And to now turn around and say, well, she's not making findings on these other things, those were things on which she made findings and no issue was raised by the district. And the evidence is ample on that. And, you know, I think the JA 2023-2024 compilation is, you know, pretty illustrative of what was in the record in this case, showing the USAO adjustment and the LSI adjustment stacked up against the information gleaned from the law firm specific, more granular, you know, concrete evidence in the case. And just, you know, showing where this all falls and how both of the inflation-adjusted LAFI rates are lower than what the other data show. I understand the court's, you know, observation. The only thing I can respond is that most recently this court in Ely said for-profit prevailing rates are applicable only if lawyers are doing the same type of litigation. And the preparation and trial of complex federal issues is not the same type of litigation as the post-judgment monitoring that's being conducted here. So what should we do then? Send it back for the district court to reconsider in light of our decision in Ely or? I think the court might elaborate. I think this is an area that certainly is in need of guidance to the district court. These are ongoing fee requests. I think the plaintiffs have the right to submit requests quarterly. We're just dealing with 2011 and 2012. Never mind what they have the right to do quarterly. In the opinion that we would write, what is it you would have us say? I think it would not only be in light of the Ely decision, but in light of the nature of the litigation being conducted now in this case and what is the appropriate rate for the litigation that's being conducted currently before the district court. That's not really telling us what we should tell the district court. When you say in light of the litigation that's ongoing, you haven't said anything there. But we have to write something specific. What are we going to tell her that she did wrong and what are we going to tell her to do right? I think she failed to take account of the posture of this case. We should say you failed to take account of the posture of this case. You think a district court can follow that kind of order? No, I'm certain this court could write it better than I can articulate it. Well, do the best you can. Well, I think that as I said, in Ely we said that the rates that you're talking about here, $753 an hour is only appropriate when they're doing the same type of litigation. And the court really didn't review the fee request in light of the type of litigation that's being conducted here. This is not active federal court litigation anymore. This is a post-judgment monitoring case, and the court should take that into account. Also, the court should take into account. Now, the opposing counsel posits that the monitoring activity is actually being billed at the lower LAFI rate rather than the higher LAFI rate. Is she wrong about that? Well, no, she's not wrong. Or even below that. That's lower than the lower LAFI rate. I don't believe that's correct. But even if it were, I mean, these are negotiated rates. That's what the parties agreed to. The only rate that was left open. I thought those were under a different paragraph. We're talking about Paragraph 66 rates. That's right. But she was talking about the rates under Paragraph 64 and 65 that weren't negotiated. But you're bringing that back to life when you say that we should be looking at the nature of this litigation. And the basis on which you say that is they're now engaged in a monitoring activity rather than an ongoing litigation. So isn't that bringing life back into her proposition? Well, I take your point. I, you know, would phrase it better. It's for a work that didn't fall under Paragraph 64 and 65. Fees on fees is one large example. That's more than half of that amount. But the rates for monitoring run up to $562 an hour. I don't think that's below the, I mean, I think that's still above the lower laughing range. But you don't disagree with the following proposition, which is that in Ely the case was sent back in order to determine whether the species of litigation at issue qualified as complex federal litigation to begin with. That's correct. Okay. Thank you. And we would ask that the court either make the requested reduction or remand for guidance to the district court on these issues. Thank you. Thank you. Case is submitted.
judges: Srinivasan, Pillard, Sentelle